**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| Family Rehabilitation, Inc. d/b/a Family Care Texas, d/b/a Angels Care Home Health; <br><br> Plaintiff, <br><br> v. <br><br> Alex M. Azar, II, Secretary of the United States Department of Health and Human Services; and Seema Verma, Administrator for the Centers for Medicare and Medicaid Services; <br><br> Defendants. | Case No. 3:17-cv-3008-K |

**PLAINTIFF'S REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER OR PRELIMINARY INJUNCTION**

## TABLE OF CONTENTS

**Page**

**ARGUMENT** ................................................................................................................. 1

    A.    Defendant's Response Offers Illusory Solutions in a Failed Attempt to
Overcome its Due Process Violations................................................................... 1

    B.    Defendant's Attempts to Argue Family Rehab Has Not Suffered
Irreparable Harm Fail Due to Corporate Protections............................................ 7

    C.    Defendant Fails to Adequately State Any Harm that the Government
Would Suffer or Any Public Interest that Would Be Served By Forcing
Family Rehab Out of Business ........................................................................... 10

    D.    In the Alternative, Plaintiff Is Entitled to Mandamus Relief Because
Defendant Has Conceded that It Has Failed to Provide Plaintiff Its Right
to a Timely ALJ Hearing ................................................................................... 14

**CONCLUSION** ........................................................................................................... 16

## TABLE OF AUTHORITIES

CASES                                                                      PAGE

*Am. Hosp. Ass' n. v. Burwell,*
     812 F.3d 183 (D.C. 2016) ..................................................................4, 11, 15

*Castleberry v. Branscum,*
     721 S.W.2d 270 (Tex. 1986).......................................................................8

*Family Rehab, Inc. v. Azar,*
     886 F.3d 496 (5th Cir. 2018) ..............................................1, 7, 12, 15

*SSP Partners v. Gladstrong Investments (USA) Corp.,*
     275 S.W.3d 444 (Tex. 2008).......................................................................8

*W. Horizontal Drilling, Inc. v. Jonnet Energy Corp.,*
     11 F.3d 65 (5th Cir. 1994) .........................................................................9

*Willis v. Donnelly,*
     199 S.W.3d 262 (Tex. 2006).......................................................................8

STATUTES

42 U.S.C. 1395cc ...............................................................................................8

42 U.S.C. § 1395ff.........................................................................................2, 4

42 U.S.C. §§ 405(g) .........................................................................................4

OTHER AUTHORITIES

42 C.F.R. §§ 405.1122 ......................................................................................4

42 C.F.R. §§ 405.1124 ......................................................................................4

42 C.F.R. § 405.1132 ........................................................................................4

U.S. Gov't Accountability Office, *Medicare Fee-for-Service: Opportunities*
     *Remain to Improve Appeals Process* (May 2016) ....................................11

Plaintiff Family Rehabilitation, Inc. d/b/a Family Care of Texas, d/b/a Angels Care Home Health ("Family Rehab") files this Reply to Defendants' Opposition to Plaintiff's Motion for Temporary Restraining Order or Preliminary Injunction ("Plaintiff's Opposition" or "Opposition"). Throughout its Opposition, the Government seeks to have Family Rehab bear the consequences stemming from the drastic delays facing thousands of claimants seeking a hearing before an Administrative Law Judge ("ALJ").

Notwithstanding the undisputed fact that the responsibility for these delays falls squarely on the shoulders of the Government, the Government takes the additional step to argue that Family Rehab is solely to blame for the irreparable harm it is suffering as a result of its inability to proceed through the administrative appeals process in a timely manner. As is explained in detail below, these arguments are not only misplaced, but also a clear example of the callous approach the Government is taking toward thousands of providers mired in what the Fifth Circuit appropriately characterized as the "Byzantine" administrative appeals process. *Family Rehab, Inc. v. Azar*, 886 F.3d 496, 498 (5th Cir. 2018).

## ARGUMENT

### A. Defendant's Response Offers Illusory Solutions in a Failed Attempt to Overcome its Due Process Violations.

Throughout its Opposition, the Government attempts to shift blame to Family Rehab by proposing illusory solutions to the irreparable harm that the Government's own delays have caused Family Rehab. The Government's strategy is, frankly, disingenuous. These illusory "solutions"—namely, Family Rehab's option to escalate its appeal or, in the alternative, enter into an extended repayment plan—fail to offer Family Rehab the statutorily mandated relief to which it is entitled, a hearing before an independent and unbiased ALJ where it can provide in-person testimony from the actual health care providers. The Government's position does nothing

more than sidestep its mandatory duty to provide Family Rehab with an ALJ hearing by inappropriately forcing Family Rehab to sacrifice the due process that Congress has explicitly afforded it, *all* because the Government is unable to timely comply with its statutory mandate.

Although the Government characterizes Family Rehab's option to escalate its appeal as the "sole statutory remedy in cases of [administrative] delay" and an allegedly mandatory avenue for Family Rehab, *see* Opposition, at p. 9, this is simply not the case.  Moreover, the Government mischaracterizes the escalation option included in the Medicare statue as mandatory when, in fact, it is solely a discretionary option.  Furthermore, it is an option that Family Rehab has the right to forego as an insufficient alternative to a live hearing before an ALJ.  The truth is that the Opposition is simply attempting to use the optional escalation process as a distraction from its statutory duties[1] and have Family Rehab bear the devastating consequences resulting from the Government's inability to provide it with a timely ALJ hearing.

Indeed, the Government is effectively shirking its clear, mandatory responsibility to provide Family Rehab with an ALJ hearing by forcing Family Rehab to take the optional route of escalating its appeal through the administrative process or face bankruptcy.  In fact, the Government even goes so far as to blame Family Rehab because it chose not to escalate its appeal, when there is no question that the blame rests solely with the Government.  *See* Opposition, at p. 14 (alleging that the delays Family Rehab faces are "entirely a product" of Family Rehab's decision not to escalate its appeal).  The Government's hyper-focus on the

---

[1] As a preliminary matter, the escalation process provided for by the Medicare statute is an optional process that a provider may choose to utilize but, notably, is not obligated to use.  Nowhere in the Medicare statute does it say that an entity seeking an appeal must utilize the escalation process.  Instead, the statute states: "In the case of a failure by an administrative law judge to render a decision by the end of the [90-day] period … the party requesting the hearing *may* request a review by the Departmental Appeals Board[.]"   42 U.S.C. § 1395ff(d)(3)(A) (emphasis added).  Of particular importance, the same statute explicitly states that "an administrative law judge *shall* conduct and conclude a hearing on a decision of a qualified independent contractor … and render a decision on such hearing by not later than the end of the 90-day period beginning on the date a request for hearing has been timely filed."  42 U.S.C. § 1395ff(d)(1)(A) (emphasis added).

escalation option is nothing more than a bait-and-switch, a Hobson's choice, if you will—it seeks to back Family Rehab into an optional, abbreviated process to distract from its own unwillingness to provide Family Rehab the administrative due process to which it is entitled or, alternatively, postpone its discretionary right to recoup in the meantime.

The Government also alleges that review through the escalation process is "a meaningful opportunity to challenge the Government's overpayment determination"—when, in fact, it is simply a guarantee that a hearing is not held by independent and unbiased arbiters in which live testimony is taken, prior to an Article III court proceeding.  *See* Opposition, at p. 13. Specifically, and as conceded by the Government in its Opposition, live testimony is not available at the first two levels of appeal, but is permitted at an ALJ hearing.  In other words, a very different and more meaningful record is developed at this third, ALJ-level of review.  The opportunity to present live testimony is exactly why Family Rehab seeks its right to an ALJ hearing, and it goes directly to the importance of the ALJ level of review.

In its Opposition, the Government would apparently have this Court believe that the paper record in an administrative appeal is a "complete record" – but this is simply incorrect. *See*  Opposition, at p. 13.  At the ALJ level of review, Family Rehab would be able, for the first time, to present live testimony from the treating physicians and other medical professionals who examined the patients and determined that home health services were medically necessary.  A paper record without such live testimony is notably lacking and arguably stacked in the Government's favor.

It is also for this reason that escalation of Family Rehab's claim is an insufficient substitute for Family Rehab's due process right to proceed to an ALJ hearing and, then, through the administrative appeals process.  The escalation would simply allow it to proceed directly to

the backlog at the DAB level of appeals.  More importantly, the DAB does not conduct a hearing and rarely grants oral argument.[2]  *See* 42 C.F.R. §§ 405.1122(a), 405.1124.  Therefore, the DAB would be limited to the Qualified Independent Contractor's ("QIC") paper record, which would notably not include the crucial insights from the testimony of the medical professionals who actually examined and treated the patients at issue and made the medical necessity determinations.

Of course, any subsequent escalation to a court would be an equally inadequate remedy because the court would also be limited to the paper record.   42 U.S.C. §§ 405(g), 1395ff(b)(1)(A), (d)(3)(B); 42 C.F.R. § 405.1132.  In other words, if Family Rehab exercised its option to escalate its appeal to a court, it effectively sacrifices its statutory right to present testimony from its physicians and medical personnel—the *only* individuals who have personal knowledge of the patients whose claims are being evaluated.

It is equally unreasonable for the Government to suggest that escalation is an adequate remedy, because it effectively shifts the burden to the Article III courts to hear the thousands of appeals in the ALJ and DAB backlogs.  Such a shift would effectively eliminate administrative review, which Congress expressly provided for in the Medicare statute.  To assert that escalation is an adequate remedy for Family Rehab is to suggest that the entire administrative review process established by Congress is moot and unnecessary.

Contrary to the Government's actions, Family Rehab has complied with its statutorily mandated deadlines.  Family Rehab has timely requested its appeal at the first, second, and third levels of the administrative appeals process.  But because Family Rehab has chosen to present live testimony—which it is expressly entitled to do—the Government blames Family Rehab for

---

[2]  *See, e.g.*, *Am. Hosp. Ass' n. v. Burwell*, 812 F.3d 183, 191 (D.C. 2016) ("Not only does the DAB itself have a backlog, but it holds hearings only where an 'extraordinary question' is involved.")

the delay in the resolution of Family Rehab's claims.  In its Opposition, the Government states: "Thus, [Family Rehab's] complaint about delay in this case is ***entirely a product of its own unwillingness to pursue escalation.***"  *See* Opposition, at p. 14 (emphasis added).  This statement captures the insensitive and callous approach that the Government's Opposition takes.  In short, the Government attempts to elevate its own interests at the expense of entities like Family Rehab, a small home health provider, by leaving the providers to shoulder the consequences stemming from the Government's own failures to comply with congressional mandates.

The Government similarly suggests that an extended repayment plan is another solution that ostensibly cures the irreparable harm that the administrative delays have caused Family Rehab.  Again, the Government offers only an illusory solution intended to distract this Court from the Government's failure to timely provide an ALJ hearing and, notwithstanding this failure, its decision to exercise its discretionary right to recoup from providers.  In its Opposition, the Government states that if Family Rehab entered into a 60-month repayment plan allotted for situations of extreme hardship, it would owe only $150,000 each month to CMS in recoupment, which the Government argues is doable based on pre-recoupment 2017 revenues.  *See* Opposition, at p. 20.  Yet, in so arguing, the Government ignores the Declarations submitted by Family Rehab, which demonstrate that its current monthly incomes total approximately only $21,000.  *See* Plaintiff's Motion in Support of Verified Amended Complaint for Temporary Restraining Order and Preliminary Injunction (hereinafter "Plaintiff's Motion in Support of Amended Verified Complaint"), Ex. A, Decl. of Robert Harry, at ¶¶ 7, 12.

Moreover, the Government's arguments ignore the reality that Medicare receivables must cover expenses incurred in providing the home health services.  Furthermore, even if Family Rehab was still operating at its former capacity, the Government suggests that Family Rehab

could withstand losing a full *third* of its revenue for a period of five years.  And because it will likely take that long to be heard before an ALJ, the Government will have recouped over $7 million from Family Rehab before Family Rehab has its first opportunity to be heard before an unbiased and independent ALJ.  As stated above, Family Rehab's monthly revenues from CMS have fallen from $463,000 to $21,000.  *See* Plaintiff's Motion in Support of Verified Amended Complaint, Ex. A, Decl. of Robert Harry, at ¶¶ 7, 12.  The financial pressures that Family Rehab has struggled to withstand as a result of recoupment have eliminated any likelihood that it will continue to operate in the next few months—much less withstand $150,000 of recoupment from CMS on a monthly basis.  *See id.*, at ¶ 11, 14-15.

Finally, the suggestion that Family Rehab can simply draw out payments over time, all-the-while still waiting for an ALJ hearing, is a red herring.  Any such elongated repayment plan does nothing to address the fact that the Government has blatantly violated Family Rehab's due process rights to an ALJ hearing and, because of the Government's inability to provide such due process, Family Rehab will be out of business effective imminently, unless this Court provides it with the preliminary injunctive relief it requests.

Over 90 days have passed since Family Rehab timely filed its request for an ALJ hearing, but no such hearing is forthcoming.  Whether the Government seeks to recoup the alleged overpayment in 12 months or 60 months, the result is the same:  CMS has failed to comply with its statutory mandate while still choosing to exercise its discretionary right to recoup and, as a result, Family Rehab will imminently go out of business, suffer irreparable harm, and be deprived of its due process rights.

**B.      Defendant's Attempts to Argue Family Rehab Has Not Suffered Irreparable Harm Fail Due to Corporate Protections.**

In an effort to undermine Family Rehab's claim of irreparable harm, the Government alleges that Family Rehab's claims of shuttering refer only to an "unspecified date in the future."[3]  Sadly, these statements are another example of the Government's insensitive and callous reaction to the plight of small home health agencies who face bankruptcy while awaiting an ALJ hearing.  Indeed, the Government appears to sneer at Family Rehab's attempt to hang on financially in an effort to receive the due process to which it is statutorily entitled.  Indeed, the Government's allegations and the positions it has taken simply proves the Fifth Circuit's opinion in this matter: "[W]e must 'be especially sensitive' to irreparable injury 'where the Government seeks to require claimants to exhaust administrative remedies merely to enable them to receive the [rights] they should have been afforded in the first place.'"  *Family Rehab*, 886 F.3d at 504 (citing *Bowen v. City of New York*, 476 U.S. 467, 484 (1986).

Similarly, the Government's reference to other separate and distinct agencies as a means of opposing the devastation of Family Rehab is not only inappropriate and callous, but it disregards statutory protections afforded corporations.  The Government argues that other agencies which share common ownership should be tapped to fund Family Rehab until such time as the Government sees fit to provide Family Rehab with its due process rights.  Once again, the Government seeks to have Family Rehab—and any entity related to Family Rehab—suffer the

---

[3] Notwithstanding its arguments, the Government's criticism is, in fact, incorrect.  Family Rehab argued throughout its Verified Amended Complaint and Memorandum in support of same that it would go out of business imminently. *See, e.g.*, Plaintiff's Verified Amended Complaint, at p. 15; Plaintiff's Memorandum in Support of Verified Amended Complaint, at pp. 19, 21, 22.  The Chief Financial Officer ("CFO") of AngMar Medical Holdings, Inc., Robert Harry, stated in his declaration: "If such recoupment continues, it will irreparably harm Family Rehab, and we will be forced to close our doors and declare bankruptcy imminently."  *See* Plaintiff's Memorandum in Support of Verified Amended Complaint, at Ex. A, ¶ 15.  Accordingly to Merriam-Webster, the definition of "imminent" is "ready to take place" or "hanging threateningly over one's head[.]"  Merriam-Webster, Definition of "Imminent" (last accessed Jun. 20, 2018) (available at https://www.merriam-webster.com/dictionary/imminent).  It is illogical for the Government to suggest that a company which has laid off 89% of its employees and ceased treatment for 97% of its patients in a matter of six to eight months will be able to survive for any meaningful amount of time, let alone some indeterminate time in the future.

financial burden associated with the Government-imposed three to five year delay at the ALJ level of appeal.  As with its violation of Family Rehab's due process rights to a hearing, the Government's position violates the due process rights of Texas corporations.

Under Texas law, corporations are afforded protections to avoid just this type of action. But it is not only Texas law that prevents this type of action—so too does Medicare.  In situations where agencies with common ownership are separately incorporated with separate tax identification numbers, such as those the Government references in its Opposition, Medicare does not allow recoupment against the related entities.  *See* 42 U.S.C. 1395cc(j)(6)(A), (B)(i) (stating that "the Secretary may make any necessary adjustment to payments to the applicable provider of services or supplier" which is one that "has the same taxpayer identification number assigned … to the obligated provider of services or supplier").

Similarly, it is a "bedrock principle of corporate law" that an individual may incorporate a business while also shielding himself from personal liability, and this 'corporate veil' may only be pierced in certain express situations.  *Willis v. Donnelly*, 199 S.W.3d 262, 271 (Tex. 2006); *see also Castleberry v. Branscum*, 721 S.W.2d 270, 271 (Tex. 1986).  The Supreme Court of Texas has "never approved of imposing joint liability on separate entities merely because they were part of a single business enterprise" because such an approach would compromise the principle of limited liability for corporations.  *See SSP Partners v. Gladstrong Investments (USA) Corp.*, 275 S.W.3d 444, 451 (Tex. 2008).

Indeed, in order to properly allege that the Government's discretionary recoupment from Family Rehab is an exception to the protection afforded corporations, the Government was required to separately plead each basis upon which this Court should pierce the corporate veil. *See Castleberry*, 721 S.W.2d at 275 n.5.  The Government failed to do so, probably because it

cannot.   Yet even if the Government had properly pleaded this issue, a court pierces the corporate veil primarily in only three situations: "(1) the corporation is the alter ego of its owners and/or shareholders; (2) the corporation is used for illegal purposes; and (3) the corporation is used as a sham to perpetrate a fraud."  *W. Horizontal Drilling, Inc. v. Jonnet Energy Corp.*, 11 F.3d 65, 67 (5th Cir. 1994).  None of these situations is present here, nor have they been alleged in any form by the Government.

By conducting a so-called "investigation" into Family Rehab and its owners, the Government disregards the due process protections afforded Texas corporations which allow them to avoid this very situation, *i.e.,* wherein another related entity would be drawn into the financial hardship, in this case caused by the Government's own actions (or inactions as the case may be).   Indeed, the Government's argument is yet another smokescreen behind which it attempts to place on Family Rehab's shoulders, the financial consequences caused by OMHA's massive backlog.   It appears that if stripping Family Rehab down to a practice of five employees and nine patients was not enough, the Government would gladly shift the financial burden to any entity related to Family Rehab for the next three to five years.   This tactic is not only statutorily barred, but reveals the Government's insensitive approach to the untenable position in which the Medicare claims backlog has placed Family Rehab and thousands of other health care providers.

Notwithstanding the due process protections afforded to corporations, the Government argues that "access to capital," ostensibly obtained from the other nine home health agencies with common ownership, precludes Family Rehab's showing of irreparable harm.   The Government relies upon decisions involving multi-billion dollar global enterprises, such as Sanofi Pharmaceuticals, Johnson & Johnson, and Mediplex Group, Inc., among others.  *See* Opposition, at p. 22.  The Government's reliance upon such findings disregards the fact that the

nine home health agencies referenced in Celia Ortega's Declaration are not subsidiaries of global, multi-billion dollar enterprises. To the contrary. Moreover, the amount which the Government seeks to recoup from Family Rehab is *more* than each of the related entities collected from Medicare claims in the span of 18 months, save for two entities. *See* Opposition, Ex. A, Decl. of Celia Ortega, at Ex. 1. And, the over $7 million that the Government seeks to recoup is *over two thirds* of what the remaining two related entities each collected from Medicare in the same 18-month period. *Id.*

If size was the issue, certainly the Government would be more capable of affording the loss than one agency serving a rural community. There can be no question that the 289 claims filed by Family Rehab are nothing when compared to the billions of claims processed by Medicare. *See* Opposition, at p. 5 ("The Medicare program currently processes over a billion claims for payment each year."). The Government's argument that Family Rehab will not suffer irreparable harm from the continued recoupment of the alleged overpayment is simply unconvincing. Family Rehab has already pared itself down to a skeleton staff and patient base in an attempt to survive these court proceedings. Any attempt to likewise affect the services offered by Family Rehab's related entities is not only legally barred, but a disingenuous attempt to shift the financial hardship related to the drastic administrative appeals delay on any entity other than the Government itself.

**C.    Defendant Fails to Adequately State Any Harm that the Government Would Suffer or Any Public Interest that Would Be Served By Forcing Family Rehab Out of Business.**

In its Opposition, the Government briefly argues that the balance of the harms weighs in its favor, and that patient care will be unaffected by Family Rehab's closure. These brief arguments are unconvincing, as it demonstrates once again that the Government wishes to hold Family Rehab's feet to the fire, but does not similarly desire to have its own feet held to the fire.

The Government first argues that Family Rehab could avoid liability by declaring bankruptcy at the time of the ALJ decision, thereby harming the Government's ability to recoup the alleged overpayment.  *See* Opposition, at p. 24.  This argument requires one to engage in gross speculation and presume that Family Rehab will lose its appeal—notwithstanding the fact that statistics demonstrate it is more likely that the Government will lose the appeal.[4]  Moreover, the Government's position, yet again, has Family Rehab bearing the burden of any consequences resulting from the Government's inability to hear administrative appeals in a timely manner.[5]  Any alleged "harm" that will befall the Government due to its inability to recoup overpayment until such time as Family Rehab is heard before an ALJ is a direct consequence of the Government's inability to provide the ALJ hearing in a timely manner—CMS has already recouped overpayments for more than the 90 days that Family Rehab should have waited for an ALJ hearing.

Curiously, while the delays are caused by the Office of Medicare Hearings and Appeals' ("OMHA") inability to address the impending backlog at the ALJ level, the Government still insists on exercising its discretionary recoupment authority to have a rural home health provider in Waxahachie, Texas bear a devastating financial burden until such time as the Government clears a 600,000+ backlog so that Family Rehab can exercise its due process right to an ALJ hearing.  In fact, the Government has recently stated its position that it is "impossible" to clear the backlog of appeals in the next several years.  *Am. Hosp. Ass'n. v. Burwell*, Case No. 1:14-cv-

---

[4]  In its Response, the Government states that "Plaintiff's preferred course of action will likely result in irreparable injury to the Government…"   Conversely, the statistics show that the majority of claims heard by the ALJ are overturned in favor of the provider or entity seeking relief.  *See* U.S. Gov't Accountability Office, *Medicare Fee-for-Service: Opportunities Remain to Improve Appeals Process*, at 69 (May 2016) (GAO Report) (finding that ALJs overturned 57% of appeals stemming from an audit performed by a Recovery Audit Contractor).

[5]  Remarkably, had Family Rehab been provided a hearing within the 90-day statutory deadline, there would have been a large Medicare receivable available for the Government to have more than recouped the simple overpayment alleged to exist and perhaps even an extrapolated overpayment based upon the claims for which the Government might prevail.

00851-JEB, Memorandum of Points and Authorities in Support of Defendant's Motion for Summary Judgment (Doc.66-1), p. 7 (D.C. Nov. 3, 2017) (stating that the Department of Health and Human Services cannot eliminate the administrative backlog by the end of 2020, as "OMHA continues to receive more appeals than it can handle—on top of an existing backlog of more than 530,000 appeals—and that gap will continue for the foreseeable future").

In light of this administrative quagmire, the Government's insistence on continuing recoupment without any guarantee of a forthcoming ALJ hearing proves the point that Family Rehab has been making.  The Government intends to recoup its overpayment long before an ALJ decision can be made on the substantive merits of Family Rehab's claims and by the time a substantive decision could be made, Family Rehab will have long been out of business.  As stated by the Fifth Circuit in considering just this issue:  "Family Rehab has [] 'raised at least a colorable claim' that erroneous recoupment [which would occur in the event that Family Rehab was successful in its ALJ appeal] will 'damage [it] in a way not recompensable through retroactive payments." *Family Rehab*, 886 F.3d at 504 (citing *Eldridge*, 424 U.S. at 331).

As evidenced by its Opposition, the Government's real concern is not Family Rehab, but the impact that a grant of injunctive relief would have on similarly situated providers.  Indeed, the Government attempts to couch its concern in the form of a 'slippery slope' argument, alleging that if this Court were to grant injunctive relief, "this would encourage other providers, even with frivolous appeals, to request an ALJ hearing to benefit from the lengthy suspension of recoupment[.]"  Opposition, at pp. 24-25.  But to be clear, the basis for Family Rehab's request for injunctive relief is not because it would be required to wait 90 days.  Family Rehab has requested injunctive relief because it has already suffered recoupment for *over* 90 days, and now faces a five-year delay.  A delay which will cause it go bankrupt and suffer irreparable harm

years before it receives its right to an ALJ hearing.  Although the Government cursorily states its "regret" on the delay, its callous disregard for the consequences of its choice to employ a discretionary action through recoupment belies any such statement of alleged regret.

Curiously, the Government also suggests that it will be harmed if Family Rehab is granted injunctive relief, because Family Rehab will be able to seek Medicare reimbursement "for a period of three to five years without any ability of the Government to recoup in this time period." (*See* Response, at p. 24, n. 15.)  First, Family Rehab does not seek injunctive relief for a period of three to five years—Family Rehab seeks injunctive relief *until such time* that it receives a hearing before an unbiased ALJ which, due to OMHA's inability to provide a timely hearing, will likely not occur for three to five years.  The timing of the hearing is completely within the Government's control, not Family Rehab's.  Family Rehab would prefer to have had its appeal heard within 90 days rather than suffer the reputational damage and financial devastation it has incurred.

It simply defies common sense for the Government to ask Family Rehab, a small home health provider, to shoulder the entire weight of OMHA's delay, so that Medicare, which processes billions of claims a year, can exercise its discretionary authority to recoup during a delay caused solely by the Government.  Stated simply, if CMS is enjoined from recouping the alleged overpayment from Family Rehab, CMS will survive.  If CMS is allowed to continue recoupment, Family Rehab will imminently go out of business and cease to exist.  As this Court stated in its Order granting temporary injunctive relief, the balance of harms weighs heavily in favor of injunctive relief.

As a last ditch effort, the Government argues that because numerous home health providers are available in the Dallas/Fort Worth metroplex, that no public interest has been

harmed by forcing over 280 elderly or otherwise ill patients to seek alternative home health care. Again, this argument is simply unconvincing.  Seeking care from areas of the state that are close to an hour, or more, from home has already created a disruption of care for these patients. Moreover, the Government disregards the harm caused to thirty-nine of Family Rehab's former employees who were laid off as a direct result of the administrative delays and recoupment brought on by the Government.  In addition, the Government disregards the unique services that Family Rehab provided to its patients, including its behavioral health and Care Connections services, which are no longer available.  It is undeniable that no public interest is served by shutting down Family Rehab and ceasing its provisions of home health services to patients when it is undisputed that there is no issue regarding the quality of care being provided to patients. Instead, the public interest will be best served should this Court restrain CMS from withholding Medicare reimbursement until Family Rehab may proceed to an ALJ hearing.

**D.**     **In the Alternative, Plaintiff Is Entitled to Mandamus Relief Because Defendant Has Conceded that It Has Failed to Provide Plaintiff Its Right to a Timely ALJ Hearing.**

If this Court does not grant injunctive relief, Family Rehab meets the criteria to obtain mandamus relief in the form of an immediate hearing before an ALJ.  In it undisputed that the Government has a clear duty to provide Family Rehab with an ALJ hearing within 90 days of its timely appeal, which the Government has failed to do.  *See* Memorandum Op. and Order (Doc. 35), at p. 6 (N.D. Tex. Jun. 4, 2018).

The Government refers to escalation as the consequence of a delay, but the statute merely provides escalation as an alternative—it is not a mandatory process as argued by the Government.  This fact is supported by the Fourth Circuit Court of Appeal's opinion cited by the Government, which found that the Medicare statute "gives the healthcare provider the *option of bypassing* each step and escalating the claim to the next level[.]"  Opposition, at p. 18 (quoting

*Cumberland City Hosp. Sys. Inc. v Burwell*, 816 F.3d 48, 54 (4th Cir. 2016).)   Again, the Government has created a Hobson's choice, in that Family Rehab can either decide to (i) escalate its claims and therefore lose its ability to present the appeal before an impartial and unbiased arbiter through a hearing with live testimony, or (ii) go bankrupt while waiting for its opportunity to be heard by the ALJ.

Even the Washington, D.C. District Court considering a more systemic solution in *Am. Hosp. Assoc. v. Burwell*, 812 F.3d 183 (D.C. Cir. 2016), considers the current status to be untenable for health care providers.   Indeed, in its February 9, 2016 decision, the district court discussed the "real impact" that the administrative appeals delays are having on human health and welfare, stating: "These consequences—none of which the government challenges—are unsurprising; common sense suggests that lengthy payment delays will affect [providers'] willingness and ability or provide care." *Id.* at 193.

Furthermore, the Government has conceded and the Fifth Circuit Court of Appeals has ruled that the Government has a duty to provide an ALJ hearing in 90 days.   *See* Opposition, at 7; *Family Rehab*, 886 F.3d at 499.   Conversely, there is no "duty" to recoup.   Yet the Government fails to address this key issue in its Opposition.   Although the Government spends almost 30 pages attempting to convince the Court that it is Family Rehab's failure to avail itself of a discretionary alternative to pursue escalation that has resulted in Family Rehab's current situation, the Government fails to address the fact that its recoupment action is itself based on a discretionary authority.   There is no question that the current situation in which Family Rehab finds itself is solely the result of the Government's action, or inaction.   Thus, it is the Government that should bear the burden, for Family Rehab has complied with all of its statutory requirements.   Indeed, due process requires that Family Rehab be provided with the opportunity

to present its case before an impartial and unbiased ALJ, complete with in-person testimony, rather than be given a Hobson's choice of proceeding with a less than suitable alternative of escalation or face bankruptcy.

## CONCLUSION

Throughout its Opposition, the Government lays all the blame for its due process violations at the feet of Family Rehab although, in fact, the delays have solely been caused by the Government. There is no question that Family Rehab has provided the services at issue, and the Government has set forth no allegation that they were not provided. Thus, the only dispute involves primarily the nature and character of the documentation. Family Rehab should be afforded the opportunity to demonstrate that the documentation was sufficient.

In order to make that case, Family Rehab timely requested its first, second, and third levels of appeal. But solely because Family Rehab has chosen to exercise its statutory right to present live testimony, which it is entitled to do, the Government demands that this Court refuse to enforce the appropriate remedy, a preliminary injunction preventing CMS from recoupment until such time as it provides Family Rehab with an ALJ hearing.

Pursuant to the positions laid out in its Verified Amended Complaint, its Memorandum in Support of its Verified Amended Complaint, and this Reply, Family Rehab respectfully requests a stay of recoupment in the form of injunctive relief until such time as the Government permits Family Rehab to appear before an ALJ.

Dated: June 21, 2018                    Respectfully submitted,


                                        /s/ *Weston C. Loegering*
                                        Weston C. Loegering
                                        Texas Bar No. 01281550
                                        wcloegering@jonesday.com
                                        JONES DAY
                                        2727 North Harwood Street
                                        Dallas, Texas 75201
                                        Telephone: (214) 220-3939
                                        Facsimile: (214) 969-5100

                                        Laura A. Bunten
                                        Texas State Bar No. 24092192
                                        lbunten@jonesday.com
                                        Rebekah N. Plowman
                                        Georgia Bar No. 531044
                                        rplowman@jonesday.com
                                        *Admitted Pro Hac Vice*
                                        JONES DAY
                                        1420 Peachtree St. N.E., Suite 800
                                        Atlanta, Georgia 30309
                                        Telephone:  (404) 521-3939
                                        Facsimile:  (404) 521-8330

                                        *Attorneys for Plaintiff*
                                        *Family Rehabilitation, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on this 21st day of June, 2018, I caused the foregoing to be electronically filed with the Clerk of the Court for the U.S. District Court, Northern District of Texas, by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.


/s/ Weston C. Loegering