# UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF TEXAS DALLAS DIVISION

| | | |
|---|---|---|
| FAMILY REHABILITATION, INC., d/b/a FAMILY CARE TEXAS, d/b/a ANGELS CARE HOME HEALTH, | § § § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 3:17-CV-3008-K |
| ALEX M. AZAR, II, SECRETARY of the UNITED STATES DEPARTMENT of HEALTH and HUMAN SERVICES; and SEEMA VERMA, ADMINISTRATOR for the CENTERS for MEDICARE and MEDICAID SERVICES, | § § § § § § § § § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff Family Rehabilitation, Inc.'s Verified Amended Complaint (Doc. No. 27) and Motion for Temporary Restraining Order and Preliminary Injunction (Doc. No. 34). The Court has carefully considered the motion, the response, the reply, the *amicus curiae* brief in support of the motion, the parties' arguments at the preliminary injunction hearing before the Court on June 26, 2018, and the law. Because Plaintiff Family Rehabilitation, Inc., has demonstrated a likelihood of success on the merits of its procedural due process claim and irreparable harm, the Court **GRANTS** the motion for preliminary injunction.

1

I.   Factual and Procedural Background

Plaintiff Family Rehabilitation, Inc. ("Family Rehab") is a Medicare-certified home health agency in Waxahachie, Texas, that, until recently, provided medical services to 289 patients in their homes, assisted living facilities, and retirement communities. Family Rehab employed over 40 nurses and staff. Defendants Alex M. Azar, II, Secretary of the United States Department of Health and Human Services and Seema Verma, Administrator for the Centers for Medicare and Medicaid Services ("Defendants" or "CMS") allege further investigation indicates Family Rehab is associated with and managed by AngMar Medical Holdings, Inc., which also manages other home health agencies in eight states. Reimbursements from CMS for medical services provided to Medicare beneficiaries made up approximately 94% of Family Rehab's revenue stream. A post-payment review process by a third-party contractor determined CMS overpaid Family Rehab for services. Based on that determination, CMS informed Family Rehab it owed over $7.5 million in overpayments.

A. An Overview of the Medicare Payment System, Post-Payment Review, and the Appeals Process

Under the Medicare program enacted in 1965 under Title XVIII of the Social Security Act, the Medicare program reimburses Medicare providers with payments for covered claims. 42 U.S.C. § 1395 *et seq*. CMS, acting as the administrator of the Medicare program, contracts with Medicare Administrative Contractors ("MACs")

2

to process and make payments on claims. *See* 42 U.S.C. §§ 1395u(a), 1395kk-1(a), 1395dd. While MACs typically pay the Medicare claims up front, the payments may later be subject to substantive review. MACs submit some claims for post-payment review, at which point a third party contractor audits the MACs decision to pay the claims and often reverses the MAC's decision.

Zone Program Integrity Contractor ("ZPIC") is a particular type of third-party contractor that performs post-payment reviews. ZPICs identify cases of suspected fraud, investigate them, and take action to recoup any Medicare payments that were improperly paid out. ZPICs generally use statistical sampling to calculate an estimated amount of overpayments, which Family Rehab alleges often results in a large overpayment amount derived from a relatively small number of claims. Defendants allege similar "[s]tatistical sampling has been used by the Medicare program since 1972 as an accepted method of estimating Medicare overpayments…." Doc. No. 36 at 5–6. ZPICs are paid on a contractual basis and have the opportunity to earn all or part of an "award fee" based on CMS's evaluation of the ZPIC's performance. CMS determines whether to extend a ZPIC's contract based on its evaluation of the ZPIC's performance. Family Rehab alleges that this contract and payment structure incentivizes ZPICs to overturn the MAC's original payment decisions. Family Rehab alleges ZPICs' claim denials were overturned on appeal 72% of the time in the first quarter of 2013. *See* Doc. No. 28 at 7.

A healthcare agency can appeal post-payment claim denials through a four-level administrative appeals process before seeking judicial review. *See* 42 U.S.C. § 1395ff.

First, a MAC reviews the denied claim for redetermination and is required to issue its decision within 60 days of receiving the request for review. *Id*. at § 1395ff(a)(3).

Second, the healthcare agency can appeal the MAC's redetermination to a Qualified Independent Contractor ("QIC") within 180 days of receiving the redetermination decision. *Id*. at § 1395ff(c). The QIC is statutorily required to issue its decision within 60 days of its receipt of the reconsideration request. *Id*.

Third, the healthcare agency can appeal the QIC reconsideration decision within 60 days of receiving the decision by requesting a hearing before an ALJ. *Id*. at § 1395ff(d)(1)(A). The statute requires the ALJ to hold the requested hearing and render its decision within 90 days of the request for hearing. *Id*. Family Rehab alleges ALJs grant relief to healthcare providers and find against ZPICs in 60% to 72% of cases. If an ALJ does not hear the case and render a decision within the required 90 day period, the healthcare agency may escalate its appeal to the fourth level of review before the Medical Appeals Council, using the record established in the previous levels of review. *Id*. at § 1395ff(d)(3)(A). The Appeals Council must render a decision or remand the case within 180 days of a timely review request. 42 C.F.R. § 405.1100(d).

Fourth, within 60 days of an ALJ decision, a dissatisfied party may appeal its claim to the Medicare Appeals Council ("Appeals Council") within the Health and Human Services Departmental Appeals Board. 42 U.S.C. § 1395(d)(2). The independent council must render a decision or remand the case to the ALJ within 90 day of the request for review. *Id*.

Finally, if a party is still dissatisfied, the party may request judicial review in federal district court.

During the first two levels of the review process, healthcare agencies can avoid recoupment by requesting appeals within specified time frames. 42 U.S.C. § 1395ddd(f)(2). However, the statute does not provide a way to avoid recoupment during the third or fourth levels of the review process. *Id*. Thus, CMS has the discretionary authority to recoup the alleged overpayment while the appeal is pending before an ALJ. *Id*.

"[T]here is a massive backlog in Medicare appeals." *Family Rehab., Inc. v. Azar*, 886 F.3d 496, 498 (5th Cir. 2018). Family Rehab alleges that as of September 1, 2017, there were 595,000 outstanding claims for adjudication. Family Rehab contends that its appeal will not be heard by an ALJ for three to five years.

### B. CMS's Post-Payment Review of Family Rehab's Services and the Resulting Appeal

In 2016, a ZPIC began the post-payment review process for some of Family Rehab's services by reviewing 43 claims. ZPIC found Family Rehab was not entitled

5

to receive payment for certain services, amounting to $124,107.53 in overpayments. ZPIC then used an allegedly unproven extrapolation method based on those 43 claims to find CMS had overpaid Family Rehab roughly $7.8 million. On January 27, 2017, the MAC issued an Overpayment Demand Letter for $7,885,803.23 based on the ZPIC's determination. Family Rehab timely requested a redetermination of the denial of the claims at issue. When the MAC only slightly decreased the amount owed in overpayments, Family Rehab timely appealed the MAC's redetermination to the QIC. The QIC affirmed all but one of the claims it reviewed. On September 27, 2017, Family Rehab received a final Overpayment Demand Letter for the amount of $7,622,122.31. Throughout this process Family Rehab never requested a repayment plan because it alleges such plan would still require too high a monthly payment to be feasible.

On October 24, 2017, Family Rehab timely requested an ALJ hearing of the individual claim denials and the statistical methodology the ZPIC used to calculate the alleged overpayments. As of the date of this opinion eight months later, no hearing has occurred and no hearing has even been set despite the statutory requirement that a hearing before an ALJ occur within 90 days of the request. On November 1, 2017, CMS began recouping the alleged $7.5 million in overpayments by withholding Medicare reimbursements to Family Rehab. Prior to the recoupment, Family Rehab relied on Medicare reimbursements for approximately 88% to 94% of Family Rehab's revenues. Since recoupment, Family Rehab has been forced to lay off

39 employees (89% of its staff) and to terminate healthcare services for 281 of its 289 patients.

On October 31, 2017, Family Rehab filed its complaint and emergency motion for temporary restraining order, seeking to enjoin CMS from beginning the recoupment process until after Family Rehab's case has been heard and determined by the ALJ. The Court reluctantly dismissed the initial temporary restraining order for lack of jurisdiction based on its understanding of binding Fifth Circuit case law and prior decisions from this Court. Family Rehab appealed to the Fifth Circuit. In reversing this Court's decision, the Fifth Circuit noted "these [collateral-claim exception] requirements have led to disharmony among our district courts" and took the opportunity to clarify the relevant case law. *Family Rehab., Inc.*, 886 F.3d at 502. On remand, Family Rehab has now filed an amended motion for temporary restraining order and preliminary injunction. Having granted the temporary restraining order and held a hearing on the preliminary injunction, the Court now considers Family Rehab's motion for preliminary injunction.

II. **Legal Standard**

"'The purpose of a preliminary injunction is to preserve the status quo and thus prevent irreparable harm until the respective rights of the parties can be ascertained during a trial on the merits.'" *Serna v. Tex. Dept. of State Health Servs., Vital Statistics Unit*, No. 1-15-CV-446-RP, 2015 WL 6118623, at 13 (W.D. Tex. Oct. 16, 2015) (quoting *Exhibitors Poster Exch., Inc. v. Nat'l Screen Serv. Corp.*, 441

F.2d 560, 560 (5th Cir. 1971)). "The decision to grant or deny a preliminary injunction is discretionary with the district court." *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985). To be entitled to a preliminary injunction, the movant must satisfy each of the following equitable factors: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury; (3) the threatened injury to the movant outweighs the threatened harm to the party sought to be enjoined; and (4) granting the injunctive relief will not disserve the public interest. *Canal Auth. of State of Fla. v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974); *see also Tex. Med. Providers Performing Abortion Servs. v. Lakey*, 667 F.3d 570, 574 (5th Cir. 2012) (quoting *Bluefield Water Ass'n, Inc. v. City of Starkville*, 577 F.3d 250, 252-53 (5th Cir. 2009)).

"None of the four requirements has a fixed quantitative value." *Monumental Task Comm., Inc. v. Foxx*, 157 F. Supp. 3d 573, 582 (E.D. La. 2016) (citing *Texas v. Seatrain Int'l, S.A.*, 518 F.2d 175, 180 (5th Cir. 1975)). "Therefore, in applying the four part test, 'a sliding scale is utilized, which takes into account the intensity of each in a given calculus.'" *DeFranceschi v. Seterus, Inc.*, Civ. Action. No. 4:15-CV-870-O, 2016 WL 6496323, at *2 (N.D. Tex. Aug. 2, 2016) (O'Connor, J.) (citing *Monumental Task Comm.*, 157 F. Supp. 3d at 582). "This requires 'a delicate balancing of the probabilities of ultimate success at final hearing with the consequences of immediate irreparable injury that possibly could flow from the denial of preliminary relief.'" *Monumental Task Comm.*, 157 F. Supp. 3d at 582 (citing

8

*Klitzman, Klitzman & Gallagher v. Krut*, 744 F.2d 955, 958 (3d Cir. 1984)). As long as the court cannot say there is no likelihood of prevailing on the merits but finds the factor of substantial likelihood of success present to some degree, then the party seeking the injunction has met its burden. *Productos Carnic, S.A. v. Central Amer. Beef and Seafood Trading Co.*, 621 F.2d 683, 686 (5th Cir. 1980).

III.   Analysis

> A. Family Rehab Has a Substantial Likelihood of Success on the Merits of Its Procedural Due Process Claim.

Family Rehab bases its motion for preliminary injunction on its procedural due process claim and contends it is "likely, if not certain, to prevail" on this claim because the CMS's discretionary recoupment has begun without first providing Family Rehab the procedural due process mandated under the statute. Defendants argue Family Rehab is not likely to succeed on the merits of its due process claim because the statute allows CMS to begin recouping overpayments at the third level of the appeals process, the hearing before the ALJ, and provides Family Rehab an alternative to receive meaningful, independent review when an ALJ cannot hear the case within the prescribed 90 days.

"When the other factors weigh strongly in favor of an injunction, 'a showing of some likelihood of success on the merits will justify temporary injunctive relief.'" *DeFranceschi*, 2016 WL 6496323, at *2 (citing *Monumental Task Comm.*, 2016 WL 311822, at *5 (quoting *Productos Carnic, S.A.*, 621 F.2d at 685)). "However, no

9

matter how severe and irreparable the threatened harm and irrespective of the hardships in which a preliminary injunction or lack of one might cause the parties, 'the injunction should never issue if there is no chance that the movant will eventually prevail on the merits.'" *Id.* (quoting *Monumental Task Comm.*, 2016 WL 311822, at *5 (citing *Texas v. Seatrain Intern.*, 518 F.2d 175, 180 (5th Cir. 1975))). The district court "look[s] to 'standards provided by the substantive law'" to determine likelihood of success on the merits. *Janvey v. Alguire*, 647 F.3d 585, 596 (5th Cir. 2011) (quoting *Roho, Inc. v. Marquis*, 902 F.2d 356, 358 (5th Cir. 1990)). The substantive law to be considered here is procedural due process.

Procedural due process protects against governmental deprivation of a liberty or property interest. *See Matthews v. Eldridge*, 424 U.S. 319, 332 (1976). Courts weigh three factors in determining whether the procedural due process provided is adequate:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal administrative burdens that the additional or substitute procedural requirement would entail.

*Id*. at 335. Family Rehab does not argue that the statutory appeals process does not provide adequate due process but that CMS's failure to follow Congress's mandated procedures results in inadequate procedural due process.

Family Rehab has a property interest in the Medicare payments for services

rendered. While Defendants make a cursory argument in a footnote that Family Rehab has no interest in participating in Medicare, the Court is not persuaded by the readily distinguishable, non-binding Sixth Circuit case law that Defendants cite. *See Cathedral Rock of North College Hill, Inc. v. Shalala*, 223 F.3d 354, 365 (6th Cir. 2000). The Sixth Circuit in *Cathedral Rock of North College Hill, Inc.* held that the nursing facility did not have a private interest in being a Medicare provider because the program is intended to benefit patients. Here, however, Family Rehab has a property interest in receiving payments owed to it for services rendered.

Having found Family Rehab has a property interest, the Court next considers whether there is a high risk of an erroneous deprivation of Family Rehab's property interest under the current appeals process due to the extreme backlog of cases before the ALJs. *See Eldridge*, 424 U.S. at 335. Family Rehab contends it will go out of business before receiving the procedural due process it is owed and that is statutorily provided by way of an evidentiary hearing before an ALJ. Family Rehab alleges 60%–72% of cases are overturned at the ALJ hearing stage of the review process, making it highly likely the ALJ will overturn the finding of alleged overpayments in this case. Defendants respond that the statute allows CMS to begin recoupment at this stage and that it provides for the sole remedy to any delays in receiving an ALJ hearing—escalation of the claims to the Appeals Council.

The language requiring an ALJ to hear an appeal and render a decision within 90 days is clearly mandatory. Section 1395ff(d)(1)(A) states "an administrative law

11

judge *shall* conduct and conclude a hearing…and render a decision on such hearing by not later than the end of the 90-day period beginning on the date a request for hearing has been timely filed." 42 U.S.C. § 1395ff(d)(1)(A) (emphasis added). Whereas the statutory language allowing a party to escalate its appeal to the Appeals Council if an ALJ has not rendered a decision in 90 days is discretionary: "…the party requesting the hearing *may* request a review by the Departmental Appeals Board." *Id*. at 1395ff(d)(3)(A) (emphasis added). Thus, the appealing party has the option of waiting for an evidentiary hearing before an ALJ or escalating its appeal to the Appeals Council who would review the record established at the QIC reconsideration stage of the appeals process.

Family Rehab alleges the Office of Medicare Hearing and Appeals' own data shows alleged overpayments are overturned at the ALJ level 60%–72% of the time. Family Rehab is a small home healthcare provider, serving 289 patients until recently, and relies on Medicare reimbursements for services rendered for approximately 94% of Family Rehab's revenue stream. By beginning to recoup alleged Medicare overpayments, CMS is essentially forcing Family Rehab to subsist off a small fraction of its usual revenue. A healthcare agency may be able to float its expenses and survive for the statutorily imposed 90-day period for an ALJ to hear and decide the appeal even while its alleged overpayments are in recoupment. However, it is unreasonable to expect a healthcare agency to scrape by for three to five years waiting for a hearing and decision while CMS recoups the alleged

overpayments.

The extreme backlog in cases before ALJs began in 2010, long after the Medicare program was enacted in 1965. While the statute allows CMS to begin recouping the alleged overpayments before the ALJ renders a decision, Congress likely did not anticipate that decision being delayed much longer than the statutorily prescribed 90 days and certainly not a delay of three to five years. Allowing CMS to continue recouping the alleged overpayments while Family Rehab waits for a hearing effectively forces Family Rehab to close its business without providing the statutorily mandated procedural due process. The Court finds that forcing Family Rehab to wait three to five years for a hearing while overpayments are in recoupment creates a high risk of erroneous deprivation of Family Rehab's property interest. The Court must determine whether escalating its appeal provides Family Rehab sufficient procedural due process for CMS to begin recoupment of alleged overpayments before an ALJ has heard the appeal and rendered a decision.

Defendants contend *Matthews v. Eldridge* supports their argument that escalation meets procedural due process requirements and an evidentiary hearing is not necessary. 424 U.S. at 343–47. Defendants argue that the Supreme Court held that an evidentiary hearing is not required before terminating an individual's disability benefits because a review of medical documents and the written record provides sufficient procedural due process and witness testimony is not required. *Id*. at 343–344. However, *Eldridge* is clearly distinguishable from the case before the

13

Court. The issue before the Supreme Court centered on whether procedural due process required an evidentiary hearing *prior* to terminating disability benefits. *Id*. at 339–340. The plaintiff still had an opportunity to appeal the termination of his disability benefits and have an evidentiary hearing before an ALJ within a year after his benefits were terminated. *Id*. at 341–343. In the case before this Court, the issue involves whether, *after* beginning the process of recouping alleged overpayments, procedural due process requires an evidentiary hearing within the statutorily provided 90 days. If Family Rehab chose to escalate its appeal, Family Rehab would never get the opportunity to be heard and present witnesses at an evidentiary hearing. The Appeals Council would simply review the record that was before the QIC and any further appeal to the federal district court would similarly be limited to that written record. Thus, unlike the plaintiff in *Eldridge*, Family Rehab would not have the benefit of an evidentiary hearing within a year of the alleged overpayments going into recoupment. Escalation does not provide a remedy to the backlogged ALJs because it does not provide adequate procedural due process.

As to the third factor in determining whether the procedural due process provided is adequate, the Court finds the Defendants' interest will not be adversely affected by delaying the recoupment of alleged overpayments until after the ALJ hearing and determination, assuming the determination is in the Defendants' favor. The Defendants argue that if the recoupment is delayed and the Defendants are successful at the ALJ stage, Family Rehab will declare bankruptcy and not repay the

alleged overpayments. While the Court is sympathetic to this argument, this hypothetical risk makes a number of assumptions and does not outweigh Family Rehab's ongoing deprivation of its property interest without sufficient procedural due process.

The Court determines that Family Rehab has established a substantial likelihood of success on the merits of its procedural due process claim. There is a high risk that Family Rehab will be erroneously deprived of its property interest because CMS will continue recouping alleged overpayments from Family Rehab without providing the statutorily mandated ALJ hearing. Because an ALJ hearing will not occur for three to five years, Family Rehab will be forced to close its business before ever receiving the procedural due process it is owed.

### B. Family Rehab Has a Substantial Threat of Irreparable Injury If the Recoupment of Alleged Overpayments Continue.

Family Rehab argues irreparable injury exists because continued recoupment will force Family Rehab to close its doors long before an ALJ hears its case and issues its decision. Defendants contend no threat of irreparable injury exists because Family Rehab can escalate its appeal instead of waiting three to five years for an ALJ hearing.

To establish threat of irreparable harm in a preliminary injunction, Family Rehab must show "a significant threat of injury from the impending action, that the injury is imminent, and that money damages would not fully repair the harm."

*Humana, Inc. v. Jacobson*, 804 F.2d 1390, 1394 (5th Cir. 1986). "In the Medicare withholding context, going out of business can be sufficient evidence of irreparable injury." *MaxMed Healthcare, Inc. v. Burwell*, No. SA:14-CV-988-DAE, 2015 WL 1310567, at *3 (W.D. Tex. Mar. 23, 2015).

Here, CMS continues the process of recouping over $7.5 million in alleged overpayments without Family Rehab receiving the statutorily required hearing and decision on the MAC's overpayment determination. Having already laid off most of its employees and limiting home healthcare services to only 8 of its previous 289 patients, Family Rehab will be forced to permanently close its doors long before receiving an ALJ hearing if CMS continues recoupment in this manner.

Defendants argue Family Rehab fails to establish a substantial threat of irreparable injury because it has other options besides waiting three to five years for a hearing, such as escalating its appeal or entering into a repayment plan. Neither of these options, however, establishes that Family Rehab has no substantial threat of irreparable injury. Under Defendants' theory, what is an alternative appeals process under the statute would instead become a mandatory appeals process, which was not the intended purpose of escalation. *See* 42 U.S.C. § 1395ff(d)(3)(A). Also, as discussed above, escalating its appeal deprives Family Rehab of an evidentiary hearing and offers inadequate procedural due process. Family Rehab alleges the 60-month repayment plan would not provide relief because the required monthly payments, while feasible based on its prior revenue, are no longer feasible given

Family Rehab's dramatically reduced number of patients and much reduced revenue stream.

Defendants argue no irreparable harm exists because Family Rehab is a subsidiary of a much larger healthcare agency with subsidiaries and related home health providers in multiple states. As a result, Family Rehab's related entities allegedly have the resources to finance Family Rehab and allow it to survive the recoupment of the alleged overpayments while waiting for the ALJ hearing and decision. Defendants cite no Fifth Circuit case law supporting this argument. The Fifth Circuit and Texas case law have clearly established that liability cannot be imposed on a separate entity merely because it is a related entity unless the party seeking to hold the entity responsible pierces the corporate veil. *See W. Horizontal Drilling, Inc. v. Jonnet Energy Corp.*, 11 F.3d 65, 67 (5th Cir. 1994); *see also Willis v. Donnelly*, 199 S.W.3d 262, 271 (Tex. 2006). Defendants have not attempted to pierce the corporate veil and there appears no reason to do so. Thus, Family Rehab's related entities and their financial solvency are not relevant to determining whether it will suffer irreparable harm.

The Court finds Family Rehab has sufficiently established a substantial threat of immediate and irreparable harm for which no adequate remedy at law exists.

### C. The Threatened Injury to Family Rehab Outweighs the Threatened Harm to the Defendants.

The balance of harms in granting the preliminary injunction between Family

Rehab and Defendants weighs in favor of granting the relief. Family Rehab will shutter its doors, employees will lose their jobs, and patients will lose their home healthcare provider while waiting for the statutorily mandated ALJ hearing if the preliminary injunction is not granted. Whereas, Defendants will not suffer harm from granting the injunctive relief because they will have the opportunity to later recoup any overpayments if the ALJ reaches a decision in their favor. The facts sufficiently support a finding that any harm to Defendants caused by enjoining the recoupment of alleged overpayments does not outweigh the harm faced by Family Rehab if the preliminary injunction is denied.

### D. Granting the Injunctive Relief Does Not Disserve the Public Interest.

The quality of healthcare service Family Rehab provides to patients is not at issue, only the reimbursements for those services. No public interest would be adversely affected by granting the preliminary injunction. If anything, the public would benefit from continued access to Family Rehab's home healthcare services.

## IV. Conclusion

The Court finds at this preliminary stage that Family Rehab has a substantial likelihood of success on the merits of its procedural due process claim because of the extreme backlog of cases on appeal to ALJs. The Court also finds Family Rehab will likely be forced to permanently close its doors immediately if this injunction is not granted. Because these and the remaining factors support a preliminary injunction,

the Court **GRANTS** Family Rehab's preliminary injunction. The Court **ORDERS** that the Defendants are <u>restrained and enjoined from withholding Medicare payments and receivables</u> to Family Rehab to effectuate the recoupment of the alleged overpayments in the underlying claims <u>until such time as an ALJ has heard and rendered a decision</u> on Family Rehab's appeal of CMS's overpayment determination. This preliminary injunction does not enjoin Defendants from withholding Medicare payments for any new alleged claims of overpayments that may occur in the intervening time. In its discretion, the Court waives the bond requirement for Family Rehab. *See Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 628 (5th Cir. 1996).

**SO ORDERED.**

Signed June 28th, 2018.

_____
ED KINKEADE
UNITED STATES DISTRICT JUDGE