# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| FAMILY REHABILITATION, INC., | § | |
| d/b/a FAMILY CARE TEXAS, d/b/a | § | |
| ANGELS CARE HOME HEALTH | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:17-CV-3008-K |
| | § | |
| ALEX M. AZAR, II, SECRETARY of the | § | |
| UNITED STATES DEPARTMENT of | § | |
| HEALTH and HUMAN SERVICES; and | § | |
| SEEMA VERMA, ADMINISTRATOR | § | |
| for The CENTERS for MEDICARE and | § | |
| MEDICAID SERVICES | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are (1) Plaintiff's Motion for Summary Judgment on Its Application for Permanent Injunctive Relief (Doc. No. 79) and (2) Defendants' Motion for Summary Judgment (Doc. No. 82). The Court considered the motions, briefs, responses, replies, and applicable law. Because the Court finds that denying Family Rehab a hearing before an Administrative Law Judge ("ALJ") prior to implementing recoupment that would result in the end of its business violates Family Rehab's right to procedural due process, the Court **GRANTS** Plaintiff's Motion for Summary Judgment on its Application for Permanent Injunctive Relief. Because the Court grants Family Rehab's motion but finds no grounds for an *ultra vires* action or mandamus

1

relief, Defendants' Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**.

## I.     Factual and Procedural History

Family Rehab provides home healthcare services to patients in Texas, serving approximately 280 patients as of October 2017. Nearly all of its revenue—between 88 and 94 percent—comes from Medicare-reimbursable services. To be reimbursed, Family Rehab is required to perform an initial home health certification for each patient in conformity with various regulatory requirements. 42 C.F.R. § 424.22.

Defendant Alex M. Azar II ("Azar") is the Secretary of the U.S. Department of Health and Human Services ("HHS"). The Centers for Medicare and Medicaid Services ("CMS") is a division of HHS and is responsible for overseeing the Medicare program. CMS contracts with Medicare Administrative Contractors ("MACs"), which are private government contractors, to process and make these reimbursements. *See* 42 U.S.C. § 1395kk-1; 42 C.F.R. §§ 405.904(a)(2), 405.920–405.928. These payments may then be audited by Zone Program Integrity Contractors ("ZPICs"), again private contractors working for CMS. When a ZPIC identifies an overpayment, it notifies the initial private contractor (the MAC), which then issues a demand letter to the provider.

In 2016, Family Rehab's ZPIC audited 43 claims as an alleged representative sample of the hundreds of thousands of claims filed by Family Rehab between August 5, 2014 and April 12, 2016. The ZPIC determined that Family Rehab had overbilled Medicare on 93% of them and was overpaid $124,107.53 on the sampled claims.

Notably, the ZPIC based a substantial majority of the findings on Family Rehab's alleged failure to properly certify its patients as "home-bound" and thus eligible for home health care. *See* CMS IOM, Publication 100-02, MBPM, Ch. 7, § 30.1.1 (The patient's physician must provide certification that a patient is homebound. A patient is considered "homebound" if (i) the patient needs the assistance of a supportive device (*e.g.*, a wheelchair) or the assistance of another person to leave the home, or has a condition making leaving the home medically contraindicated; and (ii) a normal inability to leave the home exists, and leaving the home would require a considerable and taxing effort). The ZPIC then used a statistical method to extrapolate the alleged overbilling rate for all of Family Rehab's billing and concluded that Family Rehab had received $7,885,803.23 in excess reimbursements. Family Rehab's MAC sent it a demand for that amount, and Family Rehab began the Medicare appeals process, claiming that its patients were adequately certified as "home-bound" which meant it did not overbill.

A provider must go through a four-level appeals process. First, it may submit to the MAC a claim for redetermination of the overpayment. 42 U.S.C. § 1395ff(a)(3)(A). Second, it may ask for reconsideration from another private contractor known as a "Qualified Independent Contractor" ("QIC") hired by CMS for that purpose. *Id*. § 1395ff(c), (g); 42 C.F.R. § 405.904(a)(2). If the QIC affirms the MAC's determination, the private contractor MAC may begin recouping the overpayment by garnishing future

reimbursements otherwise due the provider. 42 U.S.C. § 1395ddd(f)(2); 42 C.F.R. § 405.371(a)(3).

Third, the provider may request *de novo* review before an ALJ within the Office of Medicare Hearings and Appeals (OMHA), an agency independent of CMS. 42 U.S.C. § 1395ff(d); 42 C.F.R. § 405.1000(d). The ALJ stage presents the opportunity to have a live hearing, present testimony, cross-examine witnesses, and submit written statements of law and fact. 42 C.F.R. § 405.1036(c)–(d). The ALJ shall conduct and conclude a hearing ... and render a decision ... *not later than 90 days after a timely request.* 42 U.S.C. § 1395ff(d)(1)(A) (emphasis added). Fourth, the provider may appeal to the Medicare Appeals Council ("Council"), an organization independent of both CMS and OMHA. 42 C.F.R. § 405.1100. The Council reviews the ALJ's decision *de novo* and is similarly required to issue a final decision within 90 days. *Id*. If the ALJ fails to issue a decision within 90 days, the provider may "escalate" the appeal to the Council, which will review the QIC's reconsideration. *Id*.

Family Rehab, challenging both the initial audit results and the extrapolation methodology, exhausted the first two stages of that administrative appeals process. It sought redetermination from the MAC and reconsideration from a QIC, which calculated its liability as $7,622,122.31. After the MAC indicated it intended to begin recoupment on November 1, 2017, Family Rehab, on October 24, 2017, timely requested an ALJ hearing.

Due to an overwhelming backlog of appeals, Family Rehab was informed at the outset that it would be unable to obtain an ALJ hearing for at least three to five years. And based on HHS's own admissions in open court and in its pleadings, the logjam of Medicare appeals shows no signs of abating anytime soon.

On October 31, 2017, Family Rehab sued for a temporary restraining order and an injunction to prevent the MAC from recouping the overpayments until its administrative appeal is concluded. Family Rehab alleges that, well before the end of its administrative appeal, it will be forced to shut down from insufficient revenues because of the MAC's recoupment. This situation, Family Rehab asserted, (1) violated its rights to procedural due process, (2) infringed its substantive due-process rights, (3) established an "*ultra vires*" cause of action, and (4) entitled it to a "preservation of rights" injunction under the Administrative Procedure Act, 5 U.S.C. §§ 704–05.

This Court held that it lacked subject-matter jurisdiction because Family Rehab had not exhausted administrative remedies. *See Family Rehab., Inc. v. Hargan*, No. 3:17-CV-3008-K, 2017 WL 6761769, at *3 (N.D. Tex. Nov. 2, 2017)(Kinkeade, J.), *aff'd in part, rev'd in part sub nom*. Family Rehab appealed and the Fifth Circuit reversed in part, holding that the Court has jurisdiction to hear a collateral challenge on both procedural due process grounds as well as an *ultra vires* action. *Family Rehab., Inc. v. Azar*, 886 F.3d 496, 504 (5th Cir. 2018). The Fifth Circuit affirmed the Court's finding that it lacked federal question jurisdiction. *Id*. at 505–06. On remand, the Court granted a preliminary injunction enjoining Azar from recouping any payment until further

proceedings could be completed. *Family Rehab., Inc. v. Azar*, No. 3:17-CV-3008-K, 2018 WL 3155911, at *7 (N.D. Tex. June 28, 2018) (Kinkeade, J.).

Family Rehab was granted leave to amend the mandamus request in its complaint (Doc. No. 27) and now moves for summary judgment on its Application for Permanent Injunctive Relief. Family Rehab alleges that Azar violated its right to procedural due process and acted *ultra vires* when attempting recoupment without providing an ALJ hearing within the statutory timeframe. Family Rehab also argues that it is entitled to a mandamus that orders a hearing in a timely manner. Azar responds that Family Rehab is provided two levels of administrative review prior to recoupment, which is more than the Constitution requires, and is not entitled to a live hearing in order to satisfy its procedural due process rights. It also argues that any risk of error that arises from depriving Family Rehab of an ALJ hearing is ameliorated by Family Rehab's right to escalate the case to the Council and then to Federal District Court.

## II.    Applicable Law

Summary judgment is appropriate when the pleadings, affidavits, and other summary-judgment evidence show that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A "material fact" is a fact that under the applicable substantive law "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of "a material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving

party." *Id.* All evidence and reasonable inferences must be viewed in the light most favorable to the nonmovant, and all disputed facts resolved in favor of the nonmovant. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005).

The moving party bears the burden of identifying those portions of the record it believes demonstrates the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 322–25. Once a movant makes a properly supported motion, the burden shifts to the nonmovant to show the existence of a genuine fact issue for trial; however, the nonmovant may not rest upon allegations in the pleadings to make such a showing. *Anderson*, 477 U.S. at 256–57. Conclusory allegations, unsubstantiated assertions, or a mere scintilla of evidence cannot defeat a motion for summary judgment. *See id.* at 249–52; *Boudreaux*, 402 F.3d at 540. "Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, or where it is so overwhelming that it mandates judgment in favor of the movant, summary judgment is appropriate." *Alton v. Tex. A&M Univ.*, 168 F.3d 196, 199 (5th Cir. 1999). If the nonmovant fails to make a sufficient showing to prove the existence of an essential element to the case and on which the nonmovant will bear the burden of proving at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322. The nonmovant must cite specific facts in the record to survive a motion for summary judgment, as "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment."

*Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) (quoting *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)); *see* FED. R. CIV. P. 56(c)(3).

Family Rehab requests that the Court permanently enjoin Azar from recouping payment until Family Rehab has received a hearing with the ALJ. The party seeking a permanent injunction must satisfy a four-part test: it must show (1) success on the merits; (2) the failure to grant the injunction will result in irreparable injury; (3) the injury outweighs any damage that the injunction will cause the opposing party; and (4) the injunction will not disserve the public interest. *United Motorcoach Ass'n, Inc. v. City of Austin*, 851 F.3d 489, 492–93 (5th Cir. 2017).

## III.    Analysis

To determine whether a permanent injunction is warranted, the Court first looks to see if the requesting party has established success on the merits of the underlying claim. *Id*. at 492. In its Motion for Summary Judgment on its Application for Permanent Injunctive Relief, Family Rehab specifically relies on its procedural due process claim. While the statutory timelines are relevant, a procedural due process inquiry does not turn on the agency's adherence to its own guidelines. *See Califano v. Yamasaki*, 442 U.S. 682, 696 (1979) (referring to the Due Process Clause as "more tolerant" than the relief provided by statute); *Wells v. Dallas Indep. Sch. Dist.*, 793 F.2d 679, 682 (5th Cir. 1986) ("If a state or local government demands that its officials

afford a more elaborate process than the Constitution requires, its demands alone cannot expand the boundaries of what concerns us here: federal constitutional due process."); *Levitt v. Univ. of Texas at El Paso*, 759 F.2d 1224, 1230 (5th Cir. 1985) ("There is not a violation of due process every time a university or other government entity violates its own rules.").

Because the Court is engaging in the "floor" inquiry of due process, it views Family Rehab's claims from a constitutional perspective and not in relation to the statute. *See Arnett v. Kennedy*, 416 U.S. 134, 167 (1974)("[T]he adequacy of statutory procedures for deprivation of a statutorily created property interest must be analyzed in constitutional terms."); *Family Rehab., Inc.*, 886 F.3d at 503 (Family Rehab's procedural due-process and *ultra vires* claims. . .require the court to determine how much process is required under the Constitution and federal law before recoupment."). The question is whether Family Rehab has received adequate due process when the money to be seized is so large (compared to the budget of the entity) that the entity will be forced to dissolve and will no longer be in existence before it could ever receive a hearing. To make the need for a hearing even more obvious, this Court made a finding that the entity has a substantial likelihood of negating the validity of that collection.

## A. Success on the Merits

The Court finds that the failure to provide an ALJ hearing before engaging in recoupment that would put Family Rehab out of business violates its right to

procedural due process. In order to receive a permanent injunction, Family Rehab must demonstrate success on the merits on at least one of the underlying claims. *United Motorcoach Ass'n, Inc.*, 851 F.3d at 492. For the reasons outlined below, the Court finds that Family Rehab has a substantial private interest in the receipt of Medicare payments for covered services it has rendered that ultimately affects its private interest in the survival of the business. The Court finds that a substantial risk of erroneous deprivation is present due to the rate at which ALJs reverse the lower administrative decisions. These two factors combine to outweigh Azar's interest in efficient administration and preservation of the Medicare fund because there is no significant threat to these interests imposed by delaying recoupment. Because the *Mathews* factors favor Family Rehab, the Court finds success on the merits for Family Rehab's procedural due process claim.

The Fifth Amendment to the Constitution provides, in part, that "no person shall be. . .deprived of life, liberty, or property, without due process of law." U.S. CONST. amend. V. Due process is a flexible inquiry that, at a minimum, requires notice and the opportunity to be heard. *See Mathews v. Eldridge*, 424 U.S. 319, 348 (1976). There is no dispute that Family Rehab was given notice and some sort of opportunity to be heard. The question is whether the hearing process was constitutionally adequate for the substantial private interest that would be affected. *See Morrissey v. Brewer,* 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due."); *Gibson v. Texas Dept. of Ins.*, 700 F.3d 227, 239 (5th Cir.

2012) (emphasizing that due process requires the opportunity to be heard "at a meaningful time and in a meaningful manner."). There are three factors the Court must consider when answering that question:

> 1) the private interest that will be affected by the official action; 2) the risk of an erroneous deprivation of such interest through the procedures used and the probable value, if any, of additional or substituted procedural safeguards; 3) the Government's interest, including the function and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail.

*Mathews*, 424 U.S. at 335.

While the Court has already had the occasion to pass on these factors as they apply to Family Rehab's facts, our previous analysis was under the lower bar required to grant a preliminary injunction. *See Family Rehab., Inc.*, 2018 WL 3155911, at *4–*7 (granting a preliminary injunction). The Court must now examine each factor in whole to determine whether Family Rehab has fully carried its burden.

## I. Family Rehab has a Substantial Private Interest in the Medicare Payments

The Court finds that Medicare providers have a legitimate claim of entitlement to payment for services that are covered under the act and actually rendered. "[T]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). "The important question to be resolved therefore is a determination of the nature of the interest plaintiffs have." *Smith v. N. Louisiana Med.*

*Review Ass'n*, 735 F.2d 168, 172 (5th Cir. 1984). "Property interests. . .are created and their dimensions defined by existing rules or understandings that stem from an independent source such as state law rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Pers. Care Prods., Inc. v. Hawkins*, 635 F.3d 155, 158 (5th Cir. 2011) (citing *Roth*, 408 U.S. at 577). Under the Medicare system, providers render services prospectively and then file for reimbursement. *See* 42 U.S.C § 1395fff ("The Secretary shall provide. . .for payments for home health services in accordance with a prospective payment system established by the Secretary under this section."). The question is whether this system of prospective payment creates "more than a unilateral expectation" of reimbursement. Family Rehab argues that the Medicare program creates a mutual expectation of repayment when a registered provider renders a covered service. Azar argues that the expectation is unilateral because Medicare has the right to deny any requested payment.

The Court finds that providers would not render the services to a Medicare patient unless they had a reasonable expectation of being reimbursed by the Medicare program. Under Azar's view of Medicare, a provider is supposed to dutifully administer services with the mere hope that the Medicare system would show it mercy when deciding what amount to reimburse. A provider would be expected to plug along knowing that, if Medicare chose not to reimburse, it would not have any property interest upon which to claim. That position is so ludicrous as to be specious. If there

were no recognized property interest, providers would be expected to treat every Medicare patient as a charity case where reimbursement would just be a nice bonus. Those who predominately administer services to Medicare patients would not have any reasonable expectation of payment and could not function as a business. Because the Medicare providers would not provide service to Medicare patients without the reasonable expectation of payment, the Medicare statute constitutes an "independent source" that "support[s] claims of entitlement" filed by Medicare providers. Because the Medicare statute outlines a program for reimbursement, a provider who renders service to Medicare patients has more than a unilateral expectation.

Family Rehab is a Medicare provider who actually rendered services that are covered under the act. There is no dispute that Family Rehab is a recognized provider under the Medicare system. *See* 42 U.S.C. § 1395x ("The term "provider of services" means a hospital, critical access hospital, skilled nursing facility, comprehensive outpatient rehabilitation facility, home health agency, hospice program, or, for purposes of section 1395f(g) and section 1395n(e) of this title, a fund."). There is no dispute that Family Rehab rendered services that are covered by the act. See Def.'s Mot. Sum. J., ECF No. 83, at 32 (arguing that the underlying dispute is about the sufficiency of the paperwork). The dispute is whether Family Rehab's patients qualified for those services based on the findings reported by Family Rehab physicians. *Id*.

The Court rejects Azar's argument that Family Rehab lacks a property interest merely because Azar characterizes the requested reimbursements as "bad claims." Azar

contends that the underlying dispute renders Family Rehab's claims to be "bad claims" and therefore no reasonable expectation of reimbursement exists. Azar directs the Court to *Smith*, 735 F.2d 168, where the Fifth Circuit stated that "[a] provider has no reasonable expectation or entitlement to be paid on a bad claim." *Id*. at 173. Our sister courts have similarly relied on this sentence when finding that no property interest exists in disputed Medicare claims. *Supreme Home Health Servs., Inc. v. Azar*, 380 F. Supp. 3d 533, 555–56 (W.D. La. 2019); *Sahara Health Care, Inc. v. Azar*, 349 F. Supp. 3d 555, 572–73 (S.D. Tex. 2018). Not only is the *Smith* case distinguishable for reasons discussed below, but Azar is misguided in his premise as well. The collateral challenge here is that Azar failed to provide sufficient process in reaching the conclusion that the requested reimbursements are "bad claims." Despite this, Azar asks the Court to find that Family Rehab has no property interest because he characterized the reimbursements as "bad" and, pursuant to *Smith*, a provider has no interest in "bad claims." If the Court were to accept Azar's allegation that the claims are bad, despite the exact challenge revolving around the fairness in reaching that conclusion, Family Rehab would have no interest to claim. If the Court permitted this back-door deprivation of Family Rehab's interest, Azar would be free to provide even less protections (or none at all) in reaching the conclusion that the claims are bad. This outcome would render due process protection a mirage. You see the chance for an appeal on the horizon, but in reality that chance is only the ghostly image of the heat on the asphalt ahead. No hearing would be held for years and years and years.

The *Smith* case is inapposite because it is addressing a property interest wholly separate from that being claimed by Family Rehab. Under the Medicare system, doctors or patients may not know that the requested service is not covered. *Smith*, 735 F.2d at 169. When a service is rendered and both parties were not aware that it was not covered, HHS used to apply a presumption in favor of coverage when reviewing. *Id*. This provision is referred to as a "Waiver of Liability" ("WOL"). *Id*. at 170. Smith was a Medicare provider who was informed that he invoked the WOL provision on multiple occasions despite having knowledge that the services were not covered. *Id*. at 171. As a result, the review board revoked his WOL privilege, meaning he was not entitled to the presumption on review. *See id*. Smith challenged the revocation by claiming he had a property interest *in the WOL presumption itself*. *Id*. at 172 ("the question presented is whether. . . the WOL presumption be accorded the status of property."). The Fifth Circuit rejected Smith's argument, stating, "The loss of the WOL presumption is clearly inconvenient to a health provider; the nature of that interest, however, does not rise to the level of a protected property interest." *Id*. at 173. In that context, the sentence offered by Azar makes sense. Smith could not invoke the WOL when he was rendering services that he knew were not covered. In other words, Smith "ha[d] no reasonable expectation or entitlement to be paid on a bad claim, that is a claim not covered under the Act." *Id*.

Under *Smith*'s description of property interests, Family Rehab has a legitimate claim of entitlement to the funds for services rendered. The Fifth Circuit held that,

"[t]he benefit created by Medicare's statutory and regulatory scheme is not the waiver of liability or the waiver of liability presumption; the benefit created is the payment of necessary expenses for certain covered medical expenses." *Id*. at 172. In fact, the Court found relevant that "[t]he revocation of plaintiffs' WOL presumption does not automatically result in the loss of any claims for services covered under the Act." *Id*. Also relevant was that Smith would not be denied payment on claims despite the revocation of the presumption. *Id*. In our case, Family Rehab is seeking payment for medical services it rendered. Due to the backlog, the current Medicare Appeals system would deprive Family Rehab of funds permanently, because Family Rehab would cease to exist after the seizure of the money through recoupment. And, most importantly, there is no allegation that Family Rehab knew these services were not covered or was attempting to commit fraud. *But Cf. Pers. Care Prods., Inc.*, 635 F.3d at 159 (holding that a provider did not have a property interest in the withholding of *present* reimbursement claims while *past* claims were under investigation for fraud – provided the withholding was authorized by statute). Azar wants the Court to accept the assertion that the claims are "bad" despite the exact challenge revolving around whether Family Rehab received adequate process in arriving at that conclusion. Absent fraud, the Court is not persuaded to agree. Because there is more than a unilateral expectation of payment and Family Rehab is not accused of fraud, the Court joins our sister courts in finding that a property interest in Medicare payments exists. *See Adams EMS, Inc. v. Azar*, 2018 WL 5264244, at *10 (S.D. Tex. Oct. 23, 2018) ("Adams has a property

interest in receiving and retaining the Medicare payments it has earned."); *Med-Cert Home Care, LLC v. Azar*, No. 3:18-CV-2372-G, 365 F. Supp. 3d 742, 751 (N.D. Tex. 2019)(Fish, J.) ("Precedent makes clear that Med-Cert has a valid property interest in receiving Medicare payments for services rendered.").

Because the sizable recoupment would put Family Rehab out of business, there is an elevated interest that the Court must consider. Whether a party has received adequate process is a flexible inquiry that depends on the circumstances. *Morrissey,* 408 U.S. at 481 ("[D]ue process is flexible and calls for such procedural protections as the particular situation demands."); *Jones v. Louisiana Bd. of Sup'rs of Univ. of Louisiana Sys.*, 809 F.3d 231, 236 (5th Cir. 2015)("The type of hearing necessary—the process due— is a function of the context of the individual case."); *Keough v. Tate*, 748 F.2d 1077, 1081 (5th Cir. 1984) ("The sufficiency of procedures employed in any particular situation must be judged in the light of the parties, the subject matter and the circumstances involved."). Due to the magnitude of the attempted recoupment, Family Rehab is virtually guaranteed to go out of business. *See* Pl.'s Mot. Summ. J., ECF No. 80, at 32–33 (documenting the substantial harm that occurred during the seven months of recoupment). Depriving Family Rehab of its existence would essentially be a greater deprivation of property (the business) that would result from the narrower deprivation of property such as withheld payments.

On top of the magnitude of the private interest, the delay in time similarly elevates the impact on Family Rehab. "The possible length of wrongful deprivation of

... benefits (also) is an important factor in assessing the impact of official action on the private interests." *Eldridge*, 424 U.S. at 341 (citation omitted). In that case, the delay between the cutoff of benefits and a final decision after hearing was greater than one year. *Id.* Here, the wait time for an ALJ hearing is projected between three and five years at the outset. While Family Rehab would go out of business in mere months were recoupment to begin, the draconian backlog emphasizes the insufficiency of the process for a provider in Family Rehab's position. Because Family Rehab had a reasonable expectation of payment and is not facing allegations of fraud, the Court finds that Family Rehab has a valid property interest in receiving Medicare payments. The Court also finds that the relevant circumstances, including the fact that Family Rehab would go out of business, call for elevated safeguards. *Cf. Jones*, 809 F.3d at 236 (citing *Babin v. Breaux,* 587 Fed. Appx. 105, 110 (5th Cir. 2014) (per curiam)) ("To determine the requisite process, a court must analyze the "interests at stake in a given case."). The interest in the Medicare payments, combined with the collateral effects of withholding such payments, combine to establish a significant private interest that will be affected by the official action.

II. <u>OMHA statistics show that there is a substantial risk of erroneous deprivation if a provider is denied an ALJ hearing</u>

Because of the high rate at which lower administrative decisions are fully overturned, denying Family Rehab an ALJ hearing creates a substantial risk of erroneous deprivation. Under the second *Mathews* factor, the Court must examine

whether the processes provided by Azar are likely to provide the truth. "The second factor focuses upon the procedures provided and the possibility of error." *Supreme Home Health Servs., Inc*, 380 F. Supp. 3d at 557. The nature of a due process hearing is shaped by the "risk of error inherent in the truth finding process as applied to the generality of cases, not the rare exceptions." *Mathews*, 424 U.S. at 344. "[A]ny inquiry under the second *Eldridge* heading must necessarily be very fact-specific.... [A] slight modification of the facts, suddenly 'smack[s] ... of administrative tyranny.'" *Cont'l Air Lines, Inc. v. Dole*, 784 F.2d 1245, 1248 (5th Cir. 1986). Here, the risk of erroneous deprivation is quantified in statistics provided by OMHA. *See OMHA Decision Statistics*, HHS (Oct. 31, 2019, 12:00 PM), https://www.hhs.gov/about/agencies/omha/about/current-workload/decision-statistics/index.html.

OMHA provides a chart that documents the rate at which providers received a fully favorable, partially favorable, or unfavorable decision and which cases were dismissed outright. *Id*. As Family Rehab points out, a correct analysis would examine the rulings that reached the merits because they speak to the accuracy of the QIC, as opposed to the failure of a provider to comply with procedures on appeal. For Fiscal Year 2017, 39.9% of the cases decided by the ALJs on the merits were fully favorable to providers. *Id*. For Fiscal Year 2018, that number increased to 44% fully favorable decisions. *Id*. For Fiscal Year 2019, the number decreased to 38.8%. *Id*. On a similar inquiry, Justice Douglas noted that a 25% reversal rate was "not insignificant." *Arnett*, 416 U.S. at 219 (Douglas, J., dissenting). The Court is not inclined to attach a number

to a due process inquiry that is inherently "flexible." *Cf. Morrissey,* 408 U.S. at 481. But when the statistics show that full reversals are occurring at a clip of 38% to 44%, the Court finds that the risk of erroneous deprivation arising from the pre-ALJ proceedings is substantial.

Azar's rebuttals to the OMHA data are unconvincing. In response to Family Rehab's statistical assertions arising from OMHA's data, Azar instead criticizes the 60-72% rate cited by the Court in its preliminary injunction order. Azar claims that those rates depend on data that is misleading and outdated. Because Family Rehab has provided current data directly from OMHA itself, the Court does not depend on the previous data in reaching its conclusion. In response to the data currently on OMHA's website, Azar points the Court to *Mathews,* where the Supreme Court upheld the sufficiency of a process even though it resulted in a 58.6% reversal rate. *Mathews,* 424 U.S. at 346. Azar aptly points out that the Supreme Court cautioned against reliance on bare statistics. *See id.* This extends to the bare comparison as well. Here, the impact on the private interest is substantially greater than that on the government's interest. Because the relative interests do not align with those weighed in *Mathews,* the Court is not persuaded that the "bare statistics" of that case control here. Because of the high rate at which QICs are being fully overturned by ALJs, the current process creates a substantial risk of erroneous deprivation.

The probable value of the "additional" safeguard in providing an ALJ hearing is apparent. The accuracy of a determination can be safeguarded by the sorts of

procedural protections traditionally imposed under the Due Process Clause. *See Bd. of Curators of Univ. of Missouri v. Horowitz*, 435 U.S. 78, 95 n 5. (1978). Here, the ALJ is the only opportunity for Family Rehab to receive a *de novo* review and compile a full record prior to escalation. Compare 42 C.F.R. § 405.1000(d) ("The ALJ or attorney adjudicator conducts a *de novo* review.") with 42 U.S.C. § 1395ff(a)(3)(A); §1395ff(c), (g) (outlining the "redetermination" and "reconsideration" stages without any reference to *de novo* standard). Azar asserts in response that plaintiff has already received two levels of *de novo* review prior to any recoupment. Under the statutory construction canon *expresio unius est exclusion alterius* (the express mention of one thing excludes all others), Congress does not mandate *de novo* review prior to the ALJ hearing and there is nothing other than Azar's assertion to demonstrate *de novo* reviews are occurring at the QIC stage. Neither the relevant statute nor the record support Azar's assertion.

There is not a violation of due process merely because the government violated the statute by failing to provide a hearing within 90 days, but the inclusion of the ALJ *is* the congressionally-sanctioned step that decreases the risk of erroneous deprivation. Azar also curiously raises the argument that, even if the ALJ hearing occurred, the ALJ lacks subpoena power and therefore cannot require the decision makers to participate. If anything, this speaks further to the unfairness of the process available to a provider. The government wins under that theory because the government were never going to provide due process even if there was a hearing. What an argument.

Escalation does not remedy the foible created by the preclusion of the ALJ. The Court must similarly examine the probable value of escalation in ascertaining the truth. *See Mathews*, 424 U.S. at 335. Azar argues that escalation, which would have been available to Family Rehab 90 days after the filing of its request for an ALJ hearing, decreases the risk associated with the substantial error rates of QICs by providing an alternative avenue of review. If escalation decreased the risk of erroneous deprivation, then Family Rehab's procedural due process claim would be undermined. Because the Council relies on the same record that is being overturned at a substantial rate, the Court is not persuaded that escalation cures the procedural ill. It is true that the Council conducts a *de novo* review. 42 U.S.C. § 1395ff ("[T]he Departmental Appeals Board shall review the case *de novo*."). This does not cure the fact that the Council defers to the QIC's fact finding in all but the "extraordinary" occasions. OMHA Medicare Appellant Forum Presentation (Feb. 12, 2014), available at https://www.hhs.gov/sites/default/files/omha/OMHA%20Medicare%20Appellant%20F orum/omha_medicare_appellant_forum_presentations.pdf.

The Court is not alone in finding that escalation is an insufficient remedy. In response to the escalation rebuttal, Senior Judge Fish held that "[b]ecause escalation would not guarantee a hearing with the opportunity to cross examine witnesses, the court finds that escalation does not provide the same procedural safeguards offered by an ALJ appeal." *Med-Cert Home Care, LLC*, 365 F. Supp. 3d at 753. The Southern District of Texas concluded the same. *See Adams EMS, Inc.*, 2018 WL 5264244, at *10

("[Escalation] does not adequately protect the procedural safeguards the statute provides the appealing party."). Nor is the elevation to District Court a remedy because of the deference required to administrative rulings. *See Superior Home Health Services, LLC*, 2018 WL 3717121, at *3 (W.D. Tex. Aug. 3, 2018) (applying the Administrative Procedure Act's arbitrary and capricious standard, which is deferential to administrative proceedings, when reviewing the Council's overpayment determination); *Med-Cert Home Care, LLC*, 365 F. Supp. 3d at 754 (a district court's review of a QIC's decision is more deferential [than the ALJ's review]."). The Fourth Circuit's recent holding that escalation was sufficient is distinguishable on two grounds. *See Accident, Injury, & Rehabilitation v. Azar*, 943 F.3d 195, 204 (4th Cir. Nov. 21, 2019) (holding that the District Court's emphasis on the ALJ hearing "relies on a faulty understanding of the relative benefits of an ALJ hearing and judicial review."). First, this Court has already found that the escalation process does not adequately protect Family Rehab's due process rights. *Family Rehab., Inc.*, 2018 WL 3155911, at *5–*6. Second, the interest of the plaintiff in *Accident, Injury, & Rehab* was not elevated to that of Family Rehab—as demonstrated by its ability to withstand recoupment losses for 2 years. *Accident, Injury, & Rehabilitation*, 943 F.3d at 199. The fact that Family Rehab would be forced to close its doors long before receiving a hearing controls the analysis. Whether it be the impartiality of the ALJ or the opportunity to flesh out the record, the statistics show that the ALJ hearing is critical to decreasing the risk of erroneous deprivation. Because escalation requires a provider to give up its right to the ALJ hearing and permits

the Council to rely solely on the QIC record, the Court sides with our sister courts in finding that escalation is an insufficient remedy against the risk of erroneous deprivation.

### III. Azar's interest in efficient administration and preserving the Medicare fund is not substantially harmed by delaying recoupment

Azar's interest in protecting the Medicare fund and ensuring its efficient administration is undercut by the lack of any substantial threat arising from delayed recoupment. The third *Mathews* factor weighs the "fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Jones*, 809 F.3d at 238 (citing *Mathews,* 424 U.S. at 335). The requisite amount of process due decreases with the increased government's interest. Here, Azar argues that he has an interest in protecting the Medicare fund and administering it efficiently. The Court acknowledges that Azar's interest is valid. *See Mathews* at 424 U.S. at 348 ("[T]he Government's interest, and hence that of the public, in conserving scarce fiscal and administrative resources is a factor that must be weighed.); *Supreme Home Health Servs., Inc.*, 380 F. Supp. 3d at 557 ("The costs of making continued payments for an additional three to five years to hundreds of thousands of providers that have been determined by multiple independent reviews to have been overpaid, with little hope of later recovering the overpayment, would likewise be enormous."). These cases, however, support the notion that the government should not be barred from collecting where recoupment would not substantially disrupt the provider's operations or

threaten its existence. *See Supreme Home Health Servs., Inc.*, 380 F. Supp. 3d at 557 (refusing to engage the "going out of business" argument because plaintiff had enrolled in the payment plan and successfully managed for years prior to filing suit). Because recoupment would shut Family Rehab down prior to a hearing (ironically, this threat arises from *inefficient* administration), Family Rehab's interest is greater than that involved in a typical claim dispute. Azar argues that his interest is elevated because an injunction would harm his ability to recoup if the ALJ affirms the QIC. This argument is circular. There is nothing in the record to show that Family Rehab was a failing business prior to the initial recoupment. While Family Rehab did lose operating capacity because of the initial recoupment, it has slowly rebuilt and resumed operations. To say that delaying recoupment will increase the risk that Family Rehab shuts down when recoupment seems to be the only substantial threat to its existence is nonsensical. Furthermore, Medicare debt is not dischargeable in bankruptcy. *Med-Cert Home Care, LLC*, 365 F. Supp. 3d at 754. Because the threat of failing to collect is not substantial, the government's interest in efficient administration and preservation of the Medicare fund is not substantially threatened by delayed recoupment.

IV.  Family Rehab has established a violation of procedural due process

Weighing the *Mathews* factors together, the Court finds that Azar has violated Family Rehab's right to due process by proceeding with recoupment that denies any real chance at an appeal in an ALJ hearing. Family Rehab has demonstrated that the current process would deprive it of both its property interest in Medicare payments

and its existence generally. Family Rehab has also demonstrated that the error rates of the QICs are substantial and that those errors are not remedied by escalation. Azar has failed to demonstrate that the government's interest in efficient administration and preservation of the fund would suffer significant harm by delaying collection until the ALJ renders a decision. Because the significant private interest combined with the high risk of erroneous deprivation outweighs the impact on the government's interest, the factors lead the Court to find the current process insufficient. Having found success on the merits, the Court turns to the remaining elements necessary for a permanent injunction.

## B. Failure to Grant the Injunction Will Result in Irreparable Injury

Because going out of business is debilitating and permanent, Family Rehab will suffer an irreparable injury if the Court does not grant the permanent injunction. To receive a permanent injunction, Family Rehab must demonstrate that the failure to grant the injunction will result in irreparable injury. *United Motorcoach Ass'n, Inc.*, 851 F.3d at 49. Going out of business is an irreparable injury. *Family Rehab., Inc.*, 886 F.3d at 504 ("The combined threats of going out of business and disruption to Medicare patients are sufficient for irreparable injury."); *Adams EMS, Inc.*, 2018 WL 5264244, at *10 (citing *MaxMed Healthcare, Inc. v. Burwell*, 2015 WL 1310567, at *3 (W.D. Tex. Mar. 23, 2015))("In the Medicare withholding context, going out of business can be sufficient evidence of irreparable injury."). Family Rehab has demonstrated that the failure to enjoin Azar would cause it to go out of business. Prior to the first round of

recoupment, Family Rehab had 44 employees and provided services to 289 patients. Pl.'s Mot. Summ. J., ECF No. 80, at 32. In the few months of recoupment that occurred before this Court granted a preliminary injunction, Family Rehab lost 94.7% of its revenue and cease providing service to all but 8 of its patients. *Id*. While Family Rehab has been able to rebuild in the months following the injunction, there is no dispute that full recoupment would cause Family Rehab to close its doors.

The payment plan option does not nullify the risk of irreparable injury. Azar asserts that the damage suffered by Family Rehab does not constitute irreparable injury because it can allegedly enter the payment plan and stay afloat. Azar argues that Family Rehab cannot claim an injury that is allegedly self-inflicted because it chose not to adopt a payment plan of some sort. This argument fails for two reasons. First, the payment plan would need to extend decades to keep it from substantially harming Family Rehab's operations. *See* TRO Hr'g Tr., Doc. No. 21, 16 –17. Considering that Family Rehab is not guaranteed a hearing within five years, enrollment in the payment plan could just be a prolonged termination. Second, Azar's argument that the "self-inflicted" injury bars relief is based on a double-standard. Azar is quick to point out that his failure to comply with the statute has no place in the Court's analysis but, in the same breath, argues that Family Rehab is barred from relief because it did not pursue an *optional* program under the statute. Azar is attempting to "have it both ways" by exempting the agency from compliance while seeking to penalize Family Rehab for not electing one option provided by the statute. "We must 'be especially sensitive' to

irreparable injury where the Government seeks to require claimants to exhaust administrative remedies merely to enable them to receive the [rights] they should have been afforded in the first place." *Family Rehab., Inc.*, 886 F.3d at 504 (citing *Bowen*, 476 U.S. 467, 484 (1986)). Because going out of business is permanent and the payment plan does not provide a viable solution, Family Rehab will face irreparable harm if the injunction is not granted.

## C. The Injury to Family Rehab Outweighs the Injury to Azar

Going out of business outweighs the burden of delayed recoupment. The third element the Court must consider in its permanent injunction analysis is whether "the injury [to the seeking party] outweighs any damage that the injunction will cause the opposing party." *United Motorcoach Ass'n, Inc.*, 851 F.3d at 493. Going out of business is irreparable and severe. *Adams EMS, Inc.*, 2018 WL 5264244, at *11. The harm to Azar is minimal because he can recoup the funds if an ALJ rules in his favor. *See id*. Because the injury to Family Rehab would outweigh the injury to Azar, Family Rehab has satisfied this element of the permanent injunction inquiry.

## D. The Injunction Does Not Disserve Public Interest

Because Family Rehab provides quality healthcare in a rural area and there is no harm to the public created by a grant, an injunction would not disserve the public interest. Our initial pass at this stands true.

> "The quality of healthcare service Family Rehab provides to patients is not at issue, only the reimbursements for those services. No public interest would be adversely affected by granting the []injunction. If anything, the public would benefit from continued access to Family Rehab's home healthcare services." *Family Rehab., Inc.*, 2018 WL 3155911, at *7.

Azar argues that this element fails because patient care would not be affected by Family Rehab's closure and granting the injunction would have "harmful consequences" to the government. This argument is a reiteration of the "weighing injuries" prong and does not provide any argument past the bare assertion about patient care. It is undisputed that Family Rehab is in a relatively rural area. There is nothing on the record past bare assertions that Family Rehab's patients would be able to find replacement healthcare without going to great lengths. The Court reiterates its finding that the injunction does not disserve the public interest.

## E. Family Rehab is Entitled to a Permanent Injunction

After reviewing the arguments of both parties, the Court concludes that Family Rehab is entitled to a permanent injunction. Family Rehab achieved success on the merits of the underlying procedural due process claim because the *Mathews* factors weigh heavily in its favor. The Court's failure to grant an injunction will result in Family Rehab being put out of business, which is an irreparable injury. The burden on Azar is, at most, a delay in recoupment, which is outweighed by the door-closing impact on Family Rehab. The public interest is not disserved by permitting a quality healthcare provider to continue to provide service while it awaits a fair opportunity to test the

merits of recoupment. Because Family Rehab satisfied the four-part test, the Court finds that an injunction is the appropriate remedy. *See United Motorcoach Ass'n, Inc.*, 851 F.3d at 492–93.

### F. Family Rehab's *Ultra Vires* Claim

Family Rehab has not stated a viable *ultra vires* claim. An *ultra vires* action is appropriate where the government actor is "not doing the business which the sovereign has empowered him to do or he is doing it in a way which the sovereign has forbidden." *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 689 (1949). Here, Azar is permitted by the statute to begin recoupment after the reconsideration stage. The real *ultra vires* question is whether the government can recoup once Family Rehab has not received the ALJ hearing after 90 days. This is where escalation does sanction the right to collect while waiting. Complying with the statute does not mean Azar has satisfied Family Rehab's procedural due process rights. *See* Section III.A., *supra* (explaining that procedural due process is a constitutional, not statutory, inquiry). Complying with the statute does mean that Family Rehab has no viable *ultra vires* claim. Because Family Rehab has no grounds for an *ultra vires* claim, the Court **GRANTS** Azar's Motion for Summary Judgment as to the *ultra vires* claim.

### G. Mandamus

Family Rehab has not established a right to mandamus relief. The Fifth Circuit expressly held that mandamus is not appropriate where the relief is injunctive in nature.

*Family Rehab., Inc.*, 886 F.3d at 506. Family Rehab filed an Amended Complaint (Doc. No. 27) requesting a mandamus that orders the ALJ to provide a hearing within 90 days of the order. "Mandamus may only issue when (1) the plaintiff has a clear right to relief, (2) the defendant has a clear duty to act, and (3) no other adequate remedy exists." *Wolcott v. Sebelius*, 635 F.3d 757, 768 (5th Cir. 2011). Because Family Rehab's requested relief is that the Court prevent Azar from recouping prior to providing an ALJ hearing, an injunction will provide the necessary relief. Because another adequate remedy exists, Family Rehab's mandamus petition fails and the Court must **GRANT** Azar's Motion for Summary Judgment on the mandamus issue.

## IV.    Conclusion

Family Rehab has been put to the task of Sisyphus but, adding to his task, Sisyphus dies before he can reach the top of the hill for a chance at an appeal. Family Rehab is entitled to a permanent injunction. Because the ALJ stage is critical in decreasing the risk of erroneous deprivation and the impact on Family Rehab's private interest is substantially greater than that on Azar, precluding Family Rehab from such a hearing before recoupment begins violates its right to procedural due process. Because going out of business is a severe and irreparable harm, the second and third elements of a permanent injunction are satisfied. Because Family Rehab provides quality healthcare in a rural area, the public interest will not be disserved by the injunction. Family Rehab has carried its burden; the Court **GRANTS** Family Rehab's Motion for Summary Judgment on its Application for Permanent Injunction and **DENIES** Azar's

Motion for Summary Judgment on the procedural due process issue. The backlog of appeals does not protect the government actor when it violates the procedural due process of the other side.

Because Family Rehab has not demonstrated that it can sustain an *ultra vires* action or is entitled to mandamus, Azar's Motion for Summary Judgment is **GRANTED** as to those two claims. Azar is enjoined from recouping any payment from Family Rehab until it has provided the ALJ hearing.

**SO ORDERED.**

Signed January 15th, 2020.

_____

ED KINKEADE
UNITED STATES DISTRICT JUDGE